# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

JARVIS NUNLEY, BARBARA SIMPSON, )
and SHEILA HYSTER, )
                                              )
      Plaintiffs, )
                                              )
   v. )    No. 4:08-CV-1664 CAS
                                              )
ETHEL HEDGEMAN LYLE ACADEMY, )
                                              )
      Defendant. )

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Ethel Hedgeman Lyle Academy's ("defendant" or "the Academy") motion to set aside default judgment. Plaintiffs oppose the motion. The Court held an evidentiary hearing on this matter on March 18, 2010. For the following reasons, defendant's motion will be granted, and the default judgment will be set aside.

## Background

On October 29, 2008, plaintiffs Sheila Hyster, Jarvis Nunley, and Barbara Simpson filed this action alleging that defendant allowed them to be subjected to a sexually hostile work environment and to be retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

Plaintiffs are current or former female employees of defendant who worked at its educational facility at 706 North Jefferson in St. Louis, Missouri, as security guards and office administrative personnel. Plaintiffs alleged in the complaint that defendant allowed Dr. Mark Harrison, former Executive Director of the Academy, to subject each plaintiff to a sexually hostile work environment by, among other things, repeatedly requesting sexual favors, touching their breasts, placing his hands

on their buttocks, touching plaintiff Simpson's vagina, and calling plaintiffs' cell phones to request sexual favors and make lewd sexual comments. Plaintiffs also alleged that Harrison retaliated against them for complaining about his sexual harassment by (1) threatening to place plaintiff Nunley on probation if she did not accede to his repeated demands for oral sex; (2) orchestrated the firing of plaintiff Simpson after she allegedly made a mistake related to employee paperwork; and (3) unilaterally changed plaintiff Hyster's work schedule so that she would be present on the weekend, when he attempted to sexually harass her.

On November 12, 2008, the Academy was served with summons and plaintiffs' complaint. The Academy never entered an appearance and never responded to the complaint. On January 23, 2009, the Clerk of Court entered a default against defendant pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. On April 15, 2009, after a hearing on damages, the Court entered default judgment against defendant in the amount of $150,000.00, the statutory maximum under 42 U.S.C. § 1981a(b). The Court later awarded plaintiffs attorneys' fees and costs in the amount of $25,390.00.

On December 16, 2009, after a Writ of Garnishment had been issued upon its assets, defendant entered its appearance and moved the Court to set aside the default judgment pursuant to Federal Rule of Civil Procedure 60(b)(1). Defendant states that it failed to respond to the summons and complaint because of "mistake, inadvertence, surprise, or excusable neglect." Specifically, defendant states that the Academy's failure to participate in this action was "the result of its former management company, Imagine [Schools], either purposefully or neglectfully, failing to inform the Academy of the Complaint or provide [the] Academy with a defense counsel."

**Facts**

The Academy is a Missouri charter school established to provide an education to "at risk" inner city students in the City of St. Louis. The Academy has been in operation since the 1999/2000 school year. The Academy is overseen by a Board of Directors, and its operations have been conducted by various management firms throughout its existence. From the 2004/2005 school year through the 2007/2008 school year, the Academy was managed by Imagine Schools, Inc. ("Imagine"), a national charter school management company. Imagine managed the Academy until July 1, 2008.

While Imagine managed the Academy, Imagine was responsible for conducting all operations of the Academy, including coordination of legal matters. Additionally, all of the administrators and employees were employed by Imagine, not the Academy. At all times relevant to the complaint, plaintiffs were employed by Imagine. Moreover, at all times relevant to the complaint, Dr. Mark Harrison, the alleged harasser, was employed by Imagine. Neither plaintiffs nor Dr. Harrison received a contract, paycheck, or any other benefit from the Academy.

*Service of the Summons and Complaint*

On November 12, 2008, special process server Jose Nunez personally served the summons and complaint upon the Academy by serving Dr. Janis Wiley, the Principal of the Ethel Hedgeman Lyle Academy's elementary school ("K-5 Academy"), located at 1509 Washington. Dr. Wiley testified at the evidentiary hearing that as Principal of the K-5 Academy during the 2008/2009 school year, she was responsible for the day-to-day operations of the school. She recalled being approached by a process server on November 12, 2008. She testified that the process server stated that he had "legal documents" to serve. Unsure of her authority to accept such documents, Dr. Wiley telephoned

- 3 -

either Cindy Metzler, the business manager of the Academy, or Joyce Roberts, the Associate Superintendent of the Academy. Dr. Wiley received authority from one of these individuals to accept service, and she signed for the paperwork. Dr. Wiley testified that she did not examine the paperwork; she gave it to her assistant to be sent to the business office at the Ethel Hedgeman Lyle Academy's middle/high school.

In January 2009, prior to entering a Clerk's Default pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court contacted plaintiffs' counsel to inform him that the return of service of the summons did not indicate the individual at the Academy who was served, or their authority to accept service as an officer or agent of the Academy. On January 14, 2009, in response to this call, process server Jose Nunez returned to the Academy and again spoke with Dr. Wiley. According to Mr. Nunez' affidavit, filed January 14, 2009, Dr. Wiley reaffirmed her authority to accept service as a general agent of the Academy and "went on to state that she forwarded the summons and a copy of the complaint to the Superintendent of the Academy."[1]

At the evidentiary hearing, the Court also heard testimony from Dr. Albert Harold, the Superintendent of the Academy during the 2008/2009 school year. Consistent with his affidavit, he stated that never received a copy of the summons and complaint, and that he was not aware of this suit until contacted by counsel in December 2009.

*The EEOC Proceedings*

Prior to the filing of the complaint, plaintiffs filed a charge of discrimination with the EEOC. During the EEOC investigation, Imagine retained legal counsel, Ms. Jovita Foster, a Partner with the

---

[1] At the evidentiary hearing, plaintiffs' counsel represented to the Court that special process server Jose Nunez is now deceased.

- 4 -

Armstrong Teasdale law firm, to defend the Academy against the charge of discrimination. On July 1, 2008, while the EEOC investigation was pending, the Academy terminated Imagine's managerial contract. When Imagine's managerial responsibilities were terminated on July 1, 2008, it ceased legal representation of the Academy in plaintiffs' pending EEOC matters. According to defendant, Imagine did not notify the Academy that it was no longer representing the Academy in this matter, upon the termination of its management contract.[2]

Similar to the Academy, plaintiffs' counsel was also apparently unaware of Imagine's termination of its legal obligations to the Academy, including representation of the Academy in this suit. In January 2009, prior to obtaining the Clerk's Entry of Default, plaintiffs' counsel contacted Ms. Foster, Imagine's attorney. He told her of his intent to seek default, and she disclaimed any representation of the Academy in this lawsuit. Plaintiffs' counsel then contacted General Counsel for Imagine, Ed Hayes, and sent Mr. Hayes a copy of the complaint. Again Imagine took no action with respect to this lawsuit, and according to defendant, Imagine did not inform the Academy of the lawsuit or the pending default judgment.

**Discussion**

Defendant moves the Court to set aside the default judgment entered in favor of plaintiffs and against defendant pursuant to Fed. R. Civ. P. 60(b)(1). A ruling on a motion to set aside a default judgment is committed to the sound discretion of the district court. U.S. ex rel. Time Equip. Rental

---

[2]In support of its motion, defendant has filed affidavit of Albert Harold, the Academy's Superintendent during the 2008/2009 school year, and Mulugheta Teferi, the Academy's current Superintendent. Both state that they had no knowledge of the EEOC charges filed by plaintiffs and no knowledge of the current litigation before December 14, 2009. See Harold Aff. at ¶¶ 5-7; Teferi Aff. at ¶¶ 12-13. Defendant also filed the affidavit of attorney Thomas A. Mickes, who has represented the Academy since March 2009. He also was never contacted by anybody regarding this matter prior to December 14, 2009. See Mickes Aff. at ¶¶ 6-7.

& Sales, Inc. v. Harre, 983 F.2d 128, 130 (8th Cir. 1993). Under Federal Rule of Civil Procedure 60(b)(1), a district court may grant relief from a default judgment because of "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1).

Excusable neglect "is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 394 (1993). The Court, in the exercise of its sound discretion, looks to (i) the danger of prejudice to the plaintiff, (ii) the length of the delay and its potential impact on judicial proceedings, (iii) the reason for the delay, including whether it was within the reasonable control of the movant, and (iv) whether the movant acted in good faith. See Johnson v. Dayton Elec. Manuf. Co., 140 F.3d 781, 784 (8th Cir. 1998) (quoting Pioneer, 507 U.S. at 395) (explaining that although "good cause" under Rule 55(c) and "excusable neglect" under Rule 60(b) examine the same factors, "most decisions . . . hold that relief from a default judgment requires a stronger showing than relief from a mere default order"). In addition, the Eighth Circuit looks to the existence of a meritorious defense. Id.

The Supreme Court has interpreted "excusable neglect" as an "elastic concept" not limited to circumstances beyond the control of the party. Pioneer, 507 U.S. at 392. In Pioneer, the Supreme Court held that whether a party's failure to meet a deadline is excusable is an equitable determination, "taking account of all the relevant circumstances surrounding the party's omission." Id. at 395.

   (1)  The Reason for the Delay

The Eighth Circuit has indicated that the reason for a party's delay is a key consideration in determining whether the party's negligence is excusable. See Lowry v. McDonnell Douglas Corp., 211 F.3d 457, 463 (8th Cir. 2000) ("The four Pioneer factors do not carry equal weight; the excuse

given for the late filing must be given greatest import."). The Eighth Circuit has also stated, however, that while the reason for the delay, including a defendant's putative negligence or "blameworthiness," constitutes a "key consideration," a district court ought not focus narrowly on that behavior. Union Pacific R.R. Co. v. Progress Rail Servs. Corp., 256 F.3d 781, 783 (8th Cir. 2001). Indeed, the "reason for a party's delay" does not give a district court "*carte blanche* . . . to disregard the other considerations" relevant to the default inquiry. Id. Rather, the district court must "engage in a careful balancing of multiple considerations." Id.

In its opening memorandum, the Academy consistently states that the reason for the delay was that "[t]he Academy was not made aware of the instant litigation, prior to receiving notice from U.S. Bancorp, on or about December 14, 2009, that the Academy's operating fund was going to be garnished." (Mem. at 3). Put differently, the delay "was the result of [the Academy's] former management company, Imagine, either purposefully or neglectfully, failing to inform the Academy of the Complaint or provide [the] Academy with a defense counsel." (Mem. at 6). This, defendant asserts, "was through no fault of its own and is clearly excusable." (Id.).

The Academy, however, does not contest that it was properly served with a copy of the summons and complaint. The Principal of the Academy, Dr. Wiley, charged with the day-to-day operations of the Academy, was approached by a process server with "legal documents." Appreciating the importance of the situation, Dr. Wiley called her superior to inquire as to whether she was authorized to accept service. At least two individuals at the Academy, therefore, were aware that the Academy had been served with "legal documents." The summons lists the Academy as the only defendant, and plainly states:

> **YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY . . . an answer to the complaint which is herewith served upon you, within **TWENTY** days after service of this summons upon you . . . . If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

(Summons at 1) (emphasis in original). Although she understood the gravity of accepting legal documents enough to contact a superior beforehand, Dr. Wiley did not treat the documents, once received, with any special priority or care. Rather, she gave the paperwork to her assistant to send to the business office of the Academy, as she would any other mail.

From this point forward, counsel for the Academy states "we don't know where [the documents] turned up." At the evidentiary hearing, defendant's counsel stated that defendant had been unable to locate any individual within the Academy's administration or the Board of Directors who had any knowledge of the suit. She said, quite frankly, "Ultimately, we don't know what happened." Piecing together the testimony, however, it is clear that one of two things happened. Either the summons and complaint were misdirected as a result of the rather chaotic situation at the Academy following the termination of its contract with Imagine, and the proper individuals did not receive the summons and complaint. Or the proper individuals at the Academy received the summons and complaint, but assumed the litigation was being handled by Imagine, just as Imagine had handled the underlying EEOC investigation.

In the Court's view, however, it is unnecessary to determine exactly why the Academy failed to respond to the complaint after the Court compares the conduct in this case to that excused in other binding precedents. In <u>Union Pacific</u>, 256 F.3d 781, for example, the Eighth Circuit held that the district court abused its discretion by refusing to grant relief from a default judgment where the defendant neglected to file an answer because of a recording error by its legal department. The

Eighth Circuit stated that the district court erred in "focusing exclusively on [defendant's] proffered reason for the mistake," which the district court found inadequate and unsatisfactory. The Eighth Circuit reasoned that the inadequacy of the reason for the default "does not provide *carte blanche* to a district court to disregard the other considerations that Pioneer Investment identified." Id. at 782. The court emphasized that the defendant had "committed a single, simple error" that "did not result from a mistake of law, nor did [defendant] act negligently over a long period of time despite receiving warnings about its omission." Moreover, similar to this case, once defendant had notice of the default judgment, it immediately sought to have the default judgment set aside.

Similarly, in Feeney v. AT&E, Inc., 472 F.3d 560 (8th Cir. 2006), the Eighth Circuit found an abuse of discretion and reversed a district court that had refused to set aside part of a declaratory judgment. More egregious than the conduct in our case, in Feeney the defendant argued "excusable neglect" when he had not checked his mail for two months, and therefore did not respond to plaintiffs' summary judgment motion. Like the district court, the Eighth Circuit found defendant's explanation for his untimely response inadequate and "careless to the point of indifference." Id. at 563. Notwithstanding its finding that "this most important factor in the analysis—reason for delay—weighs heavily against [defendant]," the court found no prejudice to plaintiffs and no intentional delay or bad faith by defendant. Id. It held the district court should have granted defendant relief from a portion of the judgment.

Finally, in Johnson v. Dayton Electric Manufacturing Co., 140 F.3d 781, 784-85 (8th Cir. 1998), the Eighth Circuit held an abuse of discretion occurred when the district court found no good cause to set aside a default that resulted from "poor communication" between the defendant, its attorney, and its insurer. Despite finding that the defendant and its attorney acted "carelessly" and

even exhibited a "cavalier approach" to the filing deadline, the Eight Circuit found the conduct did not demonstrate an "intentional flouting or disregard of the court and its procedures." Id. at 785. Like our case, the defendant attempted to cure its mistake immediately after learning of the default. And thus, coupled with a showing of a meritorious defense and the absence of prejudice to the plaintiff, the Eighth Circuit reversed the trial court and found good cause to lift the entry of default. Id.; see also Jones Truck Lines, Inc. v. Foster's Truck & Equip. Sales, Inc., 63 F.3d 685, 688 (8th Cir. 1995) (finding abuse of discretion and no "willful flouting of the [filing] deadline" where delay resulted from defendant's hope that the parties could settle out of court).

While the conduct of the Academy and its employee Dr. Wiley exhibited a cavalier approach, perhaps "careless to the point of indifference," the Court is compelled to follow binding precedent. As shown by the record, the Academy's delay resulted from either a misunderstanding regarding its legal representation, a lapse in communication with its former management company, or a failure of its employees to appreciate the significance of service of process. The Court cannot find bad faith or intentional wrongdoing. The Academy's error exhibited the same sort of lax approach excused in Union Pacific, Feeney, Johnson, and Jones Truck Lines, and did not evince an intentional flouting or blatant disregard of court rules and procedures. Also, the Academy took action as soon as it learned of the default, filing the motion to set aside within two days. Accordingly, the Court must considers the other equitable considerations under Pioneer. See Johnson, 140 F.3d at 785; Union Pacific, 256 F.3d at 783.

    (2)  The Danger of Prejudice to the Non-Moving Party and Potential Impact on These Proceedings

As the Eighth Circuit has repeatedly cautioned, "prejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits." Johnson, 140 F.3d at 785. The prejudice must be more concrete, for example, loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion. Id.

Here, the record does not reveal that plaintiffs would incur any of these difficulties if the default judgment were set aside. Nor do plaintiffs claim any prejudice in their briefing. The Court anticipates the evidence at trial will be largely testimonial. Other than themselves, plaintiffs have never identified any eye-witnesses to these events, nor does a review of the underlying EEOC investigation reveal any. The Court recognizes that memory of the events fade with time, however, plaintiffs have preserved much of their testimony at the hearing on the default judgment. Accordingly, the prejudice factor weighs in favor of setting aside the default judgment.

### (3) Meritorious Defense

Under the meritorious defense prong, the issue is "whether the proffered evidence 'would permit a finding for the defaulting party,' not whether the defense is undisputed." Johnson, 140 F.3d at 785 (quoting Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988)).

Perhaps the most compelling prong in the analysis of this case, the meritorious defense factor weighs heavily in favor of defendant. According to defendant, all three plaintiffs were employees of Imagine, not the Academy. The alleged harasser, Dr. Harrison, was employed by Imagine, not the Academy. In fact, defendant states prior to the termination of Imagine's management contract with the Academy, all individuals working at the Academy were employed by Imagine. No teachers,

administrators, or support staff were employed by the Academy until after July 1, 2008. Simply put, defendant argues plaintiffs have sued the wrong party.

Plaintiffs have not refuted the factual assertions of the Academy that it was neither the employer of plaintiffs nor the alleged sexual harasser, nor was it the employer of any employees while it contracted its management services to Imagine. Plaintiffs do not deny that they were not employed by the Academy, but instead were employed by Imagine. Further, plaintiffs do not deny that the Academy was defended by Imagine and its legal counsel during the EEOC proceedings. Instead, in one paragraph in their response, plaintiffs raise the issue of vicarious liability. The sum of their argument is that "defendant has failed to demonstrate why it was not responsible for the challenged acts of its agent." The resolution of a question of agency is heavily dependent upon the facts of each case. See Huggins v. FedEx Ground Package Sys., Inc., 592 F.3d 853, 858 (8th Cir. 2010). Under Missouri law, factors to consider are the extent of control exercised over the agent, and the right to control conduct. Id. (citing Restatement (Second) of Agency, § 220(2); J.M. v. Shell Oil Co., 922 S.W.2d 759, 764 (Mo. 1996)). Plaintiff has not suggested any factors that would establish the Academy was responsible for the conduct of Imagine's employee, Dr. Harrison.

The Court is not required to determine the likelihood of success on the merits; it is only required to determine whether the Academy presents a meritorious defense. Here, the Academy's defense that the wrong entity was named as a defendant in the complaint is supported by facts that plaintiffs have not disputed, and would result in a complete finding for the Academy. This factor weighs heavily in favor of setting aside the default judgment.

**Conclusion**

The Court concludes that the Academy's conduct was the result of excusable neglect for the reasons discussed above. The Court will therefore grant the Academy's motion to set aside the default judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Ethel Hedgeman Lyle Academy's motion to set aside default judgment is **GRANTED**. [Doc. 45]

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  29th  day of March, 2010.